COMMERCIAL BANK OF DAWSON, DAWSON SPRINGS, KENTUCKY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104280.    Promulgated March 10, 1942.

*John S. Glenn, Jr., C. P. A.*, for the petitioner.
*J. Y. Porter, Esq.*, and *John R. Stivers, Esq.*, for the respondent.

528

## OPINION.

Opper: Petitioner seeks approval of a deduction for the partial worthlessness of bonds found by an examiner of the Federal Deposit Insurance Corporation to be less valuable than the amounts at which they were carried on petitioner's books. Situations of this character

are the subject of a regulation.[5] To the extent that this provision has the effect of substituting the finding of regulatory authority for petitioner's own judgment in ascertaining the worthlessness of a debt, it may be argued that a sufficient showing has been made here. But cf. *Second National Bank of Philadelphia*, 33 B. T. A. 750; *Ruth Wight Bill*, 38 B. T. A. 796, 798. Respondent contends that the regulation requires a direction to write down or charge off by the supervisory body and that in this case the examiner's report fails to go so far with respect to a portion of the securities which were criticized. But the evidence shows that the examiner orally directed the write-down and, in any event, for reasons about to be discussed, the contention need not be further considered.

Not only ascertainment but charge-off within the taxable period is required to justify a bad debt deduction. *Carl G. Stifel, Trustee*, 7 B. T. A. 1060. And this is so whether the claim is made on the ground of complete or partial worthlessness. Revenue Act of 1938, sec. 23 (k) (1).[6] The regulation does not purport to intrude upon this province of the statutory requirements, as in fact the unequivocal language of the legislation would forbid. That this is so seems to us to be evident from the care with which the regulation provides that the effect of following the directions given to a bank by the examining agency shall be that "* * * such debts shall be conclusively presumed, for income tax purposes, to be worthless or recoverable only in part, * * *" and by a warning that nevertheless "* * * in order that any amount of the charge-off may be allowed as a deduction for any taxable year it must be shown that the charge-off took place within such taxable year." In other words, ascertainment and charge-off in the tax year are required for approval of bad debt deductions and all that the regulation supplies is a conclusive presumption as to ascertainment. Charge-off must still be shown.

---

[5] ART. 23 (k)–1. *Bad debts.—*

\* \* \* \* \* \*

(c) Where banks or other corporations which are subject to supervision by Federal authorities (or by State authorities maintaining substantially equivalent standards) in obedience to the specific orders of such supervisory officers charge off debts in whole or in part, such debts shall be conclusively presumed, for income tax purposes, to be worthless or recoverable only in part, as the case may be, but in order that any amount of the charge-off may be allowed as a deduction for any taxable year it must be shown that the charge-off took place within such taxable year.

[6] GENERAL RULE.—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection.

In the present case the record on this question is meager and confused. But from the best interpretation we can put upon it it appears that petitioner used the specific charge-off method in dealing with worthless debts but that, notwithstanding, the particular items in controversy here were not dealt with by means of such a charge-off, but through the creation of a reserve in the approximate amount of the write-down proposed by the examiner. The testimony indicates that petitioner continued to use the specific charge-off method, that it never reduced the book value or basis of any of the items in question; that it apparently took or will take a deduction for the worthlessness of specific securities to their full extent upon disposition; and that the reserve will not subsequently be affected in any way, since it will continue to be carried as a general reserve for petitioner's entire bond account.

If there was more to the story than this, the burden was upon petitioner to show it. If that is all, it not only fails to demonstrate a charge-off of these items, but in fact indicates the contrary. It did not "effectually eliminate the amount of the bad debt from the book assets of the taxpayer." *Ed C. Lasater*, 1 B. T. A. 956. There is no authorization for a taxpayer to use at the same time a charge-off and a reserve method for the deduction of bad debts. *Arthur J. Marks*, 9 B. T. A. 1047; *Rogers Peet Co.*, 21 B. T. A. 577; *Manistique Lumber & Supply Co.*, 29 B. T. A. 26. A taxpayer on the charge-off system can only comply with the statute by specific charge-off; and a reserve can not exist in such a system as an over-all general treatment disregarding specific items, even if properly created in the first instance. *Rossin & Sons, Inc.* v. *Commissioner* (C. C. A., 2d Cir.), 113 Fed. (2d) 652. These rules apply as much to banks as to any other taxpayer. *Atlantic Bank & Trust Co.* v. *Commissioner* (C. C. A., 4th Cir.), 59 Fed. (2d) 363. It follows that petitioner did not charge off these items, as it was required to do, and the deduction must be disallowed.

Such a result will not ultimately disadvantage petitioner. Not only may a partially worthless debt later be written off in its entirety when conclusive worthlessness or other disposition creates the occasion, *Moock Electric Supply Co.*, 41 B. T. A. 1209, 1211, but in fact it would appear that under petitioner's consistent method this very action did or will occur when it applies its specific charge-off to these items. On the contrary, to permit the claimed deduction now could only result in a duplication of benefits and the ultimate distortion of petitioner's taxable income.

*Decision will be entered for the respondent.*